# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

R. JAN PINNEY,

        Plaintiff,

vs.

AEGON COMPANIES PENSION
PLAN,

        Defendant.

No. 14-CV-125-LRR

**ORDER**

_____

## *TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.     **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.     **SUBJECT MATTER JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . **2**

IV.     **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    A.     *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    B.     *Overview of the Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    C.     *Relevant Provisions of the TA Plan* . . . . . . . . . . . . . . . . . . . **4**
        1.     *The 1970 TA Plan* . . . . . . . . . . . . . . . . . . . . . . . . . **5**
        2.     *The 1973 TA Plan* . . . . . . . . . . . . . . . . . . . . . . . . . **5**
        3.     *The 1976 TA Plan* . . . . . . . . . . . . . . . . . . . . . . . . . **6**
        4.     *The 1984 TA Plan* . . . . . . . . . . . . . . . . . . . . . . . . . **6**
    D.     *Claim and Appeal Process* . . . . . . . . . . . . . . . . . . . . . . . . **7**

V.     **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

VI.     **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
    A.     *Whether the Plan's Decision was an Abuse of Discretion* . . . . . . . . **11**
        1.     *The Plan's decision* . . . . . . . . . . . . . . . . . . . . . . . . **12**
        2.     *Contrary to the clear language of the Plan* . . . . . . . . . . . . **14**
        3.     *Conflict of interest* . . . . . . . . . . . . . . . . . . . . . . . . **16**
    B.     *Statute of Limitations* . . . . . . . . . . . . . . . . . . . . . . . . . . **18**
        1.     *The 1997-1998 correspondence* . . . . . . . . . . . . . . . . . . **18**
        2.     *The 1972 general agent agreement* . . . . . . . . . . . . . . . . . **22**

*VII.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**

## I.  INTRODUCTION

The matters before the court are Defendant AEGON Companies Pension Plan's ("the Plan") Motion for Judgment on the Administrative Record ("Motion") (docket no. 60) and Plaintiff R. Jan Pinney's ("Pinney") Cross Motion for Judgment on the Administrative Record ("Cross Motion") (docket no. 61).

## II.  PROCEDURAL BACKGROUND

On March 4, 2014, Pinney filed the Complaint (docket no. 1) in the United States District Court for the Northern District of California.  On August 25, 2014, Pinney filed an Amended Complaint (docket no. 18) on behalf of himself and a class of similarly situated individuals.  Pinney seeks to recover benefits for himself and a proposed class of general agents under the Employment Retirement Income Security Act of 1974 ("ERISA").  On August 29, 2014, the Plan filed a Motion to Dismiss or in the Alternative to Transfer (docket no. 21).  On November 20, 2014, the case was transferred to this court.  *See* Case Transfer (docket no. 33).  On November 21, 2014, the Plan filed an Answer (docket no. 36).  On June 24, 2015, the Plan filed the Motion.  On July 24, 2015, Pinney filed the Cross Motion.  On August 14, 2015, the Plan filed a Reply ("Plan Reply") (docket no. 62).  On August 21, 2015, Pinney filed a Reply ("Pinney Reply") (docket no. 63).  The matters are fully submitted and ready for decision.

## III.  SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over Pinney's claim, which arises under ERISA, 29 U.S.C. § 1132(a)(1)(B).  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## IV. FACTUAL BACKGROUND

### A. Parties

Pinney is a citizen of California and resides in Roseville, California. In 1971, he became an employee of Occidental Life Insurance Company of California ("Occidental"), an affiliate of Transamerica Corporation ("Transamerica"), and thereby became a participant in Transamerica's employee benefit pension plan. The Plan is an employee benefit pension plan within the meaning of ERISA, 29 U.S.C. § 1002, and is administered in Iowa.

### B. Overview of the Dispute

This case arises out of Pinney's claim that the Plan denied him pension benefits to which he is entitled. Between 1971 and 1997, Pinney worked for Transamerica under three different job classifications. In 1971, Pinney began working as an Assistant Branch Manager. The following year, in 1972, Pinney became a General Agent. In 1985, Pinney became a Branch Manager. Pinney continued working for Transamerica as a Branch Manager until 1997.[1] Over the course of his employment with Transamerica, Pinney participated in and accrued benefits under three different employee benefit pension plans. The first plan under which Pinney accrued benefits is the Retirement Plan for Salaried Employees of Transamerica Corporation ("TA Plan").[2] The second plan that Pinney accrued benefits under is the General Agents Plan ("GA Plan"). The third plan that he accrued benefits under is the Agents Plan.

In July of 1997, Pinney stepped down from his position as a Branch Manager and the TA Plan estimated his benefits, informing Pinney he would receive "employee"

---

[1] On August 1, 1997, Pinney once again became a General Agent. *See* Administrative Record ("AR") (docket no. 58) at 2380.

[2] The TA Plan has undergone several amendments and changes since Pinney began his employment and is currently named the "AEGON Companies Pension Plan."

pension credit only for the period when he had worked as a Branch Manager, from 1985 to 1997. Pinney apparently questioned this determination.[3] On June 23, 1998, the TA Plan sent Pinney a letter (the "1998 Letter") informing him that it had made a mistake in calculating his benefits, and that Pinney was also entitled to benefit service under the TA Plan from 1971 to 1972 when he worked as an Assistant Branch Manager.[4] The 1998 Letter did not mention the period from 1972 to 1985 when Pinney worked as a General Agent.

In July of 1999, AEGON acquired Transamerica. On January 1, 2001, the TA Plan and its liabilities were acquired by the Plan. Pinney was scheduled to begin receiving benefits for his time with Transamerica on January 1, 2012. In mid-2011, Pinney requested a pension quote. The Plan informed Pinney that he had accrued benefits under the TA Plan from 1971 to 1972, under the GA Plan from 1972 to 1985, under the Agents Plan from 1985 until 1992 and under the TA Plan from 1985 to 1997. Pinney's benefit calculations were $5,631.18 per month from the TA Plan, $399.76 per month from the GA Plan and $318.91 per month from the Agents Plan. The Plan did not credit Pinney under the TA Plan for the thirteen years he worked as a General Agent, from May 14, 1972 through May 28, 1985.

## C. Relevant Provisions of the TA Plan

The TA Plan has undergone several amendments since Pinney first began working at Transamerica in 1971. The versions in effect when Pinney worked as a General Agent

---

[3] The only evidence in the administrative record of the 1997 correspondence between Pinney and the TA Plan is a brief statement made by Pinney to the Plan in 2011, where he references the correspondence. *See* AR at 2431-32.

[4] The Plan later determined that Pinney was only eligible for benefit service accrued during five months of his tenure as Assistant Branch Manager because he was under the age of 25 for a portion of the time and therefore ineligible for benefits under the terms of the TA Plan. *See* AR at 2460, 2478.

from 1972 to 1985 are the 1970 TA Plan, the 1973 TA Plan, the 1976 TA Plan and the 1984 TA Plan. The TA Plan was designed as a defined-benefit pension plan. Participants accrue service credits based on their time spent working for Transamerica and, once they reach retirement age, receive payments based upon their accrued service credits and their average compensation. The provisions from the relevant versions of the TA Plan are explained below.

### 1. *The 1970 TA Plan*

The 1970 TA Plan was in effect when Pinney first became a General Agent at Transamerica in 1972. Under this plan, accrued service credits are based on the product of one percent of the participant's monthly salary and the "number of years and fractions of years of Credited Service, up to a maximum of 25 years, rendered by the Participant to the Computation Date." AR at 2265. "Credited Service" is defined as "the period of a Participant's Continuous Service which may be used for the purpose of computing benefits to which he is entitled under the Plan." *Id.* at 2255. "Continuous Service" is defined as "continuous employment on a full-time salaried basis with the Company or with any Affiliate or former Affiliate." *Id.* at 2254. A "Participant" eligible for benefits under the 1970 TA Plan is any person who is considered an "Employee." *Id.* "Employee" is defined as "any person in the regular employ of the Company on a permanent full-time salaried basis, whose contract of employment does not exclude him from participation under the Plan." *Id.* at 2253. The 1970 TA Plan does not define "permanent full-time salaried basis."

### 2. *The 1973 TA Plan*

The 1973 TA Plan is similar to the 1970 TA Plan. Accrued service credits are based on the same formula—the combination of one percent of the Participant's monthly salary and the "number of years and complete months of Credited Service, up to a maximum of 25 years, rendered by the Participant up to the Computation Date." *Id.* at

5

2346. "Credited Service" is defined as "equal to [the Participant's] years and months of Continuous Service." *Id.* at 2339. "Continuous Service" is defined as "continuous employment on a full-time salaried basis with the Company or with any Affiliate or former Affiliate." *Id.* at 2338. A "Participant" eligible for benefits under the 1973 TA Plan is any person who is considered an "Employee." *Id.* at 2337. The definition of "Employee" remains almost identical to the 1970 TA Plan: "any person in the regular employ of the Company on its United States payroll, on a permanent full-time salaried basis, whose contract of employment does not exclude him from participation under the Plan." *Id.* Like the 1970 Plan, the 1973 TA Plan also does not define "permanent full-time salaried basis."

### 3.  The 1976 TA Plan

Although the 1976 TA Plan employs the same formula as its predecessors to determine the amount of accrued service credits, it departs from the language of the earlier plans in other areas. *See id.* at 2309. Most significantly, it divides the definition of "Employee" into two components—"Active Employee" and "Inactive Employee." *Id.* at 2303. An "Active Employee" is defined as "any person, in the regular employ of a Company on its United States payroll, on a salaried basis . . . whose contract of employment does not exclude him from participation under the Plan." *Id.* at 2300. "Inactive Employee" has several definitions. The definition relevant to this dispute is "any person who is not an Active Employee but who has entered into an agency contract with an Affiliate, provided that his service is recognized as covered service under another pension plan of a U.S. Affiliate." *Id.* at 2304. In order to accrue service credits under the 1976 TA Plan, a person must be considered an "Active Employee." *See id.* at 2302.

### 4.  The 1984 TA Plan

Under the 1984 TA Plan, Transamerica altered the formula for determining the amount of accrued service credits. The new formula looks at the difference between two

percent "of the Participant's Average Basic Monthly Salary multiplied by the number of years and fractions of a year of Benefit Service rendered by the Participant to the Computation Date," and two percent "of the Participant's Social Security Amount multiplied by the number of years and fractions of a year of Benefit Service rendered by the Participant to the Computation Date." *Id.* at 789.[5] The distinction between "Active Employee" and "Inactive Employee" in the 1984 TA Plan remains the same as the 1976 TA Plan, with only "Active Employees" eligible for benefits. *See id.* at 793. "Active Employee" is defined in the 1984 TA Plan as "any person, in the regular employ of a Company on its United States . . . payroll, on a salaried basis. Active employees will also include such hourly-paid Employee as determined by the Committee, whose contract of employment does not exclude him from participation under the Plan." *Id.* at 790. "Inactive Employee" is defined, in relevant part, as "any person who is not an Active Employee but who has entered into an agency contract with an Affiliate, provided that his service is recognized as covered service under another pension plan of a U.S. Affiliate." *Id.* at 797.

### D. Claim and Appeal Process

On or about December 6, 2011, Pinney submitted documents to the Plan claiming that he was an "employee" eligible for pension benefits under the TA Plan during his tenure as a General Agent between 1972 and 1985. The Plan interpreted this submission as a claim for benefits. On March 5, 2012, the Plan issued an adverse benefit determination, finding that Pinney was not entitled to increased credited service under the TA Plan for the time he spent as a General Agent because he was not an "employee" within the meaning of the TA Plan during that time. *See id.* at 2385-91. In making its

---

[5] The 1984 TA Plan also accommodates for benefits accrued under the prior formula, calculating benefits in an amount "equal to the greater" of both formulas. AR at 789.

determination, the Plan examined the definition of "employee" in each version of the TA Plan that existed over the course of Pinney's employment with Transamerica, including the 1970, 1973, 1976 and 1984 TA Plans, as well as the GA Plan and the Agents Plan. The Plan concluded that Pinney "ceased being on the salaried payroll between 1972 and 1985" when he worked as a General Agent and, therefore, was "not eligible to participate in the TA Plan for that period because [he was] not considered an Active Employee under the TA Plan for that time period." *Id.* at 2390. On July 17, 2012, Pinney appealed the Plan's adverse benefit determination. *See id.* at 2393-404. He argued that the nature of his work as a General Agent at Transamerica satisfied the eligibility requirements for an "employee" under the language of the various versions of the TA Plan. On November 21, 2012, the Plan denied Pinney's appeal. *Id.* at 2472-79. Accordingly, Pinney has exhausted administrative remedies under the Plan.

## V.  STANDARD OF REVIEW

The parties disagree over the appropriate standard of review. Pinney argues that the court should engage in a de novo review of the Plan's decision. The Plan argues that the court should apply an abuse of discretion standard of review. The dispute over the standard of review arises because the TA Plan in effect at the time Pinney's employment ended did not contain language granting the TA Plan discretionary authority to determine benefit eligibility. However, the AEGON Plan, which was in effect at the time Pinney's claim for benefits was denied, does contain such language.

"ERISA provides a plan beneficiary with the right to judicial review of a benefits determination." *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 642-43 (8th Cir. 2002) (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998)). A district court must review a denial of benefits challenged under ERISA § 1132(a)(1)(B) "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (formatting omitted). When a plan gives the administrator "discretionary authority to determine eligibility for benefits," the court must review the administrator's decision for an abuse of discretion. *Id.*

Pinney argues that the court should engage in a de novo review of the Plan's decision because "the TA Plan documents do not confer any discretionary authority on the [Plan] Committee. The TA Plan documents assign the 'power and authority' to interpret the TA Plan to the TA Pension Committee—to the extent that authority is construed as discretionary . . . it is nonetheless not an authority assigned to the [Plan] Committee that decided Mr. Pinney's claim and appeal." Brief in Support of Cross Motion (docket no. 61-1) at 13. Pinney argues that the discretionary authority language in the 2000 version of the AEGON Plan does not govern these proceedings because his employment ended in 1997. Although "[h]is claim arose and was denied in 2012, . . . the governing instrument of the [AEGON] Plan then in effect states explicitly that the Plan in effect at the time of . . . Pinney's termination is the document which governs his rights to pension benefits." *Id.* at 14. Pinney argues that because "the 2012 [AEGON] [P]lan document plainly states that . . . Pinney's rights to pension benefits are governed by the document in effect at the time of his termination, and since the allocation of discretionary authority is a substantive right," the issue of discretionary authority must be "assessed based on the documents in effect when . . . Pinney's employment terminated." *Id.* at 14. Pinney argues that because the TA Plan in effect at the time of his termination in 1997 does not provide for discretionary authority, "there is no valid grant of discretionary authority to interpret the plan documents at issue in this case and the standard of review should therefore be de novo." *Id.* at 14-15.

The Plan argues that the court should apply the abuse of discretion standard, because "the AEGON Plan's terms . . . give the Committee both discretionary authority

to determine benefit eligibility and to interpret the AEGON Plan's terms, which include the terms of plans that have merged into the AEGON Plan." Brief in Support of Motion at 13. The Plan argues that the language at issue, "[t]he Plan in effect upon an Employee's Termination Date shall govern the rights of former Employees who terminated employment prior to January 1, 2012" only impacts the analysis of Pinney's rights to benefits under the TA Plan, not his right to a standard of review, and that ERISA does not confer "a right to a particular standard of review under a plan's claim and appeal procedure." Plan Reply at 3-4.

Because the "appropriate standard of review is determined by the plan's terms at the time a claim is denied, not as the plan was before [an] intervening amendment," the court finds that abuse of discretion is the appropriate standard of review in the instant action. *See* Ronald J. Cooke, 3 ERISA Practice & Procedure § 8:45 (2015); *see also Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 196 (3d Cir. 2002) (concluding "that the better approach is to look at the plan in effect on the date the administrator actually made [the] determination. . . . [because] the administrator's discretionary authority was in place when [the] discretion was exercised"); *cf. McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789, 792 (8th Cir. 2003) (finding de novo review to be appropriate when a plan provided for discretionary authority at the time the plaintiff's claim was filed, but changed its decision-making process while the claim was still under review). Therefore, the standard of review is dictated by the version of the plan in effect at the time Pinney's claim was denied in 2012, not the version upon which Pinney's claim for benefits is based. Accordingly, the court will review the Plan's decision for abuse of discretion.

The abuse of discretion standard of review is highly deferential, reflecting the "general hesitancy to interfere with the administration of a benefits plan." *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880, 883 (8th Cir. 2002) (quoting *Layes*

*v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)). "Under the abuse of discretion standard, the court must affirm the plan administrator's interpretation of the plan unless it is arbitrary and capricious." *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010) (citing *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 896-97 (8th Cir. 2009)); *see also Meyers v. Hartford Life & Accident Ins. Co.*, 489 F.3d 348, 351 (8th Cir. 2007) ("An abuse of discretion occurs when a decision may properly be called extremely unreasonable, extraordinarily imprudent, or arbitrary and capricious."). "To determine whether a plan administrator's decision was arbitrary and capricious, the court examines whether the decision was 'reasonable.'" *Manning*, 604 F.3d at 1038 (citing *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 2005)). "Any reasonable decision will stand, even if the court would interpret the language differently as an original matter." *Id.*

## VI. ANALYSIS

### A. Whether the Plan's Decision was an Abuse of Discretion

The Plan argues that its decision was reasonable and that it "was not influenced by a conflict of interest." *See* Brief in Support of Motion at 14-18; Plan Reply at 8-9. Pinney argues that the Plan erroneously classified him as an "independent contractor" rather than an "employee" under the terms of the Plan during his tenure as a General Agent. *See* Brief in Support of Cross Motion at 9-11. He argues that the Plan's interpretation of the term "employee" is "contrary to the clear language of the Plan." Pinney Reply at 6. Furthermore, Pinney argues that the Plan's conflict of interest weighs against finding in favor of the Plan. *See* Brief in Support of Cross Motion at 15-17.

To determine whether a plan administrator's decision is reasonable, courts evaluate the following factors: (1) "whether [the Plan's] interpretation is consistent with the goals of the Plan"; (2) "whether [the Plan's] interpretation renders any language in the Plan meaningless or internally inconsistent"; (3) "whether [the Plan's] interpretation conflicts

with the substantive or procedural requirements of the ERISA statute"; (4) "whether [the Plan has] interpreted the words at issue consistently"; and (5) "whether [the Plan's] interpretation is contrary to the clear language of the Plan." *Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992). Additionally, "[w]here a fiduciary both evaluates claims for benefits and pays benefits claims, the court still applies the deferential abuse-of-discretion standard, but the fiduciary's conflict of interest is one factor to be considered in the review." *Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 601 (8th Cir. 2014).

### 1.    *The Plan's decision*

In reaching its decision that Pinney did not qualify as an "employee" under the TA Plan from 1972 to 1985, the Plan considered the following materials: the AEGON Companies Pension Plan Amended and Restated January 1, 2012, including predecessor plans; Pinney's e-mail and attachments received on December 6, 2011; the March 5, 2012 claim denial letter sent to Pinney; letters from Pinney's authorized representative; the TA Plan, including predecessor plans; the Agents Plan; the General Agents Plan; various benefit calculations; e-mails between Pinney and David Beatty, an AEGON employee; a General Agent's contract template; and a timeline of Pinney's appeal. AR at 2473-74. The Plan specifically examined the definition of the term "employee" in the 1970 TA Plan, 1973 TA Plan, 1976 TA Plan and the 1984 TA Plan. *See id.* at 2476-78.

As noted above, under the 1970 TA Plan, an "employee" is defined as "any person in the regular employ of the Company on a permanent full-time salaried basis, whose contract of employment does not exclude him from participation under the Plan." *Id.* at 2253. The Plan Committee found that when Pinney became a General Agent in 1972, he "ceased being 'in the regular employ of the Company on a permanent full-time salaried basis.'" *Id.* at 2477. Under the 1973 Plan, an "employee" is "any person in the regular employ of the Company on its United States payroll, on a permanent full-time salaried

basis, whose contract of employment does not exclude him from participation under the Plan" *Id.* at 2337. The Plan Committee found that Pinney did not meet this definition of "employee" because he was not "in the regular employ of the Company on its United States payroll, on a permanent full-time salaried basis." AR at 2477 (quotation marks omitted). Under the 1976 Plan, an "active employee" is defined as "any person, in the regular employ of a Company on its United States payroll, on a salaried basis . . . ." *Id.* at 2300. An "inactive employee" is defined as "any person who is not an Active Employee but who has entered into an agency contract with an Affiliate, provided that his service is recognized as covered service under another pension plan of a U.S. Affiliate." *Id.* at 2304. Only active employees were eligible to earn benefit service under the 1976 TA Plan. The Plan Committee found that under the terms of the 1976 TA Plan, Pinney was not considered an active employee, and therefore was not eligible for benefits under the 1976 TA Plan. *Id.* at 2478. Under the 1984 TA Plan, the definition of an active employee is "any person, in the regular employ of a Company on its United States . . . payroll, on a salaried basis." *Id.* at 790. Only Active Employees were eligible to earn benefit service under the 1984 TA Plan. The Plan Committee found that Pinney was not "in the regular employ of a Company . . . on a salaried basis" during the time he was a General Agent and, therefore, was not entitled to benefits under the 1984 TA Plan. *Id.* at 2478.

The Plan's denial of Pinney's appeal notes that it asked Pinney to provide it "with copies of Form W-2s and Form 1099s or any other documentation that has a bearing on [Pinney's] assertions for the period in question," but that Pinney failed to do so. *Id.* at 2474. The Plan states that by failing to submit this supporting documentation, Pinney had "essentially asked the Committee to accept the proposition that [he] worked as a full time salaried employee of Transamerica . . . ." *Id.* Furthermore, the Plan noted that "[t]he position of the [Plan] on the calculation of [Pinney's] benefits is consistent with the

position taken by Transamerica . . . when calculating [Pinney's] retirement benefit from the TA Plan after [Pinney] terminated employment in 1997." *Id.* at 2478. The Plan concluded that because Pinney was not "in the regular employ of [Transamerica] on a salaried basis between 1972 and 1985 and [he] was not eligible to earn additional Benefit Service in the TA Plan for that period," Pinney was not entitled to benefits under the TA Plan and, therefore, denied his appeal. *Id.* at 2478.

Pinney does not argue that the Plan's decision is inconsistent "with the goals of the Plan," "renders any language in the Plan meaningless or internally inconsistent," "conflicts with the substantive or procedural requirements of the ERISA statute" or that the Plan has interpreted the words at issue inconsistently. *Finley*, 957 F.2d at 621. The court finds that there is nothing in the record to question these factors.[6] Pinney challenges the Plan's determination that he was not an "employee" under the terms of the TA Plan and argues that the Plan had a conflict of interest. Therefore, the court will first consider whether the Plan's determination that Pinney was not an "employee" under the terms of the TA Plan "is contrary to the clear language of the Plan." *Id.* The court will then consider the conflict of interest factor.

### 2. *Contrary to the clear language of the Plan*

Pinney argues that his position as a General Agent qualifies him as an "employee" who is entitled to benefits under the TA Plan because he was "in Transamerica's 'employ' on a 'full-time salaried basis' and not otherwise excluded by his contract of employment." Brief in Support of Cross Motion at 18. He argues that the Plan's determination that he does not qualify as an "employee" under the TA Plan is "contrary to the clear language of the Plan." Pinney Reply at 6. This argument, essentially, asks the court to engage in

---

[6] The court notes that the TA Plan's earlier calculations of Pinney's benefits were consistent with the Plan's denial. *See* AR at 2483 (calculating Pinney's years of service under the TA Plan at 13.6667 years).

a "plain language" reading of the terms "employ" as used in the TA Plan. *See* Brief in Support of Cross Motion at 19-20.

The court finds that the Plan did not abuse its discretion in determining that Pinney was not eligible for benefits under the TA Plan during his tenure as a General Agent. The Plan considered whether Pinney's status qualified him as an "employee" under the terms of the TA Plan, finding that he was not "in the regular employ of the Company on a permanent full-time salaried basis." Although the term "regular employ" is not defined in the TA Plan, or any of its predecessor plans, it is reasonable to conclude that a General Agent position would not qualify as "regular employment." The General Agent contract template states that "[n]othing contained herein shall be construed to create the relation of employer and employee between the Company and the General Agent." *Id.* at 2092. Furthermore, Pinney did not present the Plan with any evidence of his salary during his years as a General Agent. *See id.* at 2474. The Plan noted that it had no record of Pinney's salary information from the time he worked at Transamerica and that Pinney had "essentially asked the [Plan] to accept the proposition that [he] worked as a full time salaried employee of Transamerica . . and [his] salary for [his] full time employment was $400.00 per month."[7] *Id.*

Pinney argues that his salary information should have been available to the Plan, but he has not pointed the court to anything that suggests it was the Plan's responsibility to retain or review such information when Pinney did not submit it for review. *See* Brief in Support of Cross-Motion at 10-11. For these reasons, the Plan found that Pinney did not satisfy the definition under any of the relevant versions of the TA Plan. Pinney argues that the Plan "appears to have access to detailed information about . . . Pinney's earnings

---

[7] Pinney argued to the Plan that his salary increased from $400 to $1,000 per month. AR at 2394. However, he did not submit any documentation to the Plan supporting either number.

during the time period in question, as this information is apparent in data produced as part of the administrative record." *Id.* at 11. However, the particular section of the administrative record he references is a "Data Verification Statement" that includes a variety of information regarding Pinney's participation in various pension plans over the years. Nothing in the Data Verification Statement contains any breakdown of Pinney's earnings to distinguish between salary, commission or other earnings during his years as a General Agent. *See* AR at 2058-2071. Accordingly, the Plan's determination did not violate the clear language of the Plan by finding that Pinney did not meet the definition of an "employee" under the TA Plan.

### 3. *Conflict of interest*

Pinney argues that the Plan has a conflict of interest and that, in light of such conflict, the court should decline to give the Plan's decision "significant deference." Brief in Support of Cross Motion at 17. The Plan argues that its decision was not "affected by any conflict of interest." Plan Reply at 9.

"[T]he fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates [a] conflict of interest . . . ." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008) (internal quotation marks omitted). Such "conflict should 'be weighed as a factor in determining whether there is an abuse of discretion.'" *Id.* at 115 (quoting *Firestone*, 489 U.S. at 115) (quotation marks omitted).

> The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy . . . .

*Id.* at 117 (citations omitted).

Pinney argues that the "conflict of interest factor should weigh heavily here because the correspondence in the administrative record shows that the [Plan] treated . . . Pinney's claim as an adversarial process in which their job was to protect the company's interests." Brief in Support of Cross Motion at 15. Pinney argues that e-mails between the Plan's personnel demonstrate that they were treating Pinney's claim "as a legal matter and specifically a litigation threat." *Id.* at 15-16. The Plan argues that it has taken active steps "to reduce potential bias and promote accuracy" in its plan administration. *See* Plan Reply at 9. The Plan states that its "finances are within the jurisdiction of the Investment Committee that has no role in deciding benefit claims and appeals." *Id.* Furthermore, the Plan argues that its "claim and appeal process was inquisitorial and not adversarial." *Id.* (formatting omitted).

The court finds that the conflict of interest factor does not weigh in favor of finding an abuse of discretion in the instant action. Although Plan personnel did consult general counsel in light of "the tacit litigation threat," this does not warrant a finding that the Plan's claim and appeal process was influenced. *See Olsen v. Standard Ins. Co.*, 40 F. Supp. 3d 1109, 1116 (D. Minn. 2014) (declining to accord additional weight to the conflict of interest factor where a plan asserted "attorney-client privilege over documents created during the claims administration process"). Here, the Plan consulted the advice of its general counsel but has not asserted attorney-client privilege for those documents. Nothing in the e-mails suggests that the Plan was attempting to do anything other than resolve Pinney's claim. *See* AR at 2413-2471. Pinney argues that the fact that the Plan "specifically calculated and was aware of the increased cost that a decision in . . . Pinney's favor would impose on the . . . Plan" indicates that the conflict of interest influenced the Plan's decision. Brief in Support of Cross Motion at 16. However, it is unsurprising that the Plan would realize that a decision in Pinney's favor would result in higher cost, since the purpose of Pinney's claim was to receive additional benefits. This fact does not

indicate that the Plan acted inappropriately. Additionally, Pinney does not argue that the Plan has a history of biased claims administration and nothing in the record suggests such a history. *See id.* at 15-17. Accordingly, the court declines to find that the Plan's conflict of interest should be given additional weight or supports a finding that the Plan abused its discretion.

In light of the above, the court finds that the relevant factors do not support a finding that the Plan abused its discretion in denying Pinney's claim. Accordingly, the court shall grant the Motion and deny the Cross Motion.

## B. Statute of Limitations

Although the court's finding that the Plan did not abuse its discretion in denying Pinney's claim is dispositive, the court shall nevertheless address whether Pinney's claim is barred by the applicable statute of limitations.

"ERISA does not contain its own statute of limitations governing actions to recover benefits." *Shaw v. McFarland Clinic, P.C.*, 363 F.3d 744, 747 (8th Cir. 2004). Therefore, courts must look to state law and "borrow the most analogous statute of limitations." *Id.* Under Iowa law, "a claim brought under ERISA relating to a contract . . . is governed by a ten-year statute of limitations." *Id.* at 748; Iowa Code § 614.1(5). The Plan argues that Pinney's claim is time-barred under two theories: (1) Pinney knew he was not entitled to benefits for his time spent as a General Agent when the TA Plan sent him an estimate of his benefits in 1997; and (2) Pinney knew he was not entitled to benefits in 1972 when he first signed the GA Agreement stating that he was not an employee but rather an independent contractor.

### 1. The 1997-1998 correspondence

The Plan argues that Pinney's claim is barred by Iowa's ten year statute of limitations on contract claims because Pinney first knew about his claim in 1997. According to the Plan, when Pinney ended his employment as a Branch Manager in 1997,

he "was informed that he was entitled to credit under the TA Employees Plan only for the years 1985 to 1997." Brief in Support of Motion at 18. The Plan states that Pinney subsequently challenged this assessment, and was then informed in the 1998 Letter that he was also entitled to benefits from 1971 to 1972, when he worked as an Assistant Branch Manager. *Id.* at 19. The Plan argues that this record demonstrates that "Pinney knew in 1997 that he was not receiving credit under the TA Employees Plan for the years 1972 to 1985." *Id.* The Plan contends that this means Pinney's claim accrued in 1997 and is now barred by Iowa's statute of limitations. In response, Pinney focuses on the 1998 Letter and contends that the letter "did not constitute a clear repudiation of [his] claim and therefore did not cause the statute of limitations to start accruing." Brief in Support of Cross Motion at 20.

The Plan raised a similar argument in its Motion for Judgment on the Pleadings (docket no. 39), which the court rejected because it could not consider the 1998 Letter in its analysis.[8] Because the court can now consider the 1998 Letter and the full administrative record, it will revisit the issue.

Federal law governs when a cause of action under ERISA accrues:

> [I]n an ERISA action "consistent with the discovery rule, the general rule is that a cause of action accrues after a claim for benefits has been made and has been formally denied." There are times, however, when "an ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed when there has been a *clear repudiation* by the fiduciary which is clear and made known to the beneficiary."

*Bennett v. Federated Mut. Ins. Co.*, 141 F.3d 837, 839 (8th Cir. 1998) (quoting *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998)) (alterations omitted)

---

[8] The court found that the 1998 Letter was neither incorporated by reference nor necessarily embraced by the pleadings. *See* March 30, 2015 Order (docket no. 53) at 7.

(emphasis added) (citations omitted) (quotation marks omitted). A cause of action may accrue, therefore, when the beneficiary knew or should have known of the repudiation of benefits "regardless of whether the [beneficiary] formally applied for benefits." *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47-48 (2d Cir. 1999). To qualify as a "clear repudiation," the communication must be "unequivocal." *See Union Pacific R.R. Co.*, 138 F.3d at 330-31.

Upon review of the 1998 Letter, the court finds that the letter does not appear to rise to the level of an unequivocal and clear repudiation. The Plan sent the 1998 Letter to Pinney to correct a mistaken calculation in a previous letter. It informs Pinney that he has satisfied the requirements to receive benefits upon retirement and includes the date when Pinney will be eligible to receive them. It also references a Retirement Estimate, which states that Pinney's years of service are calculated at 13.66667 years. This estimate does not purport to inform Pinney that the Plan has repudiated any benefits to him. Moreover, even if the court were to interpret this estimate as a purported repudiation of benefits, the calculation is extremely general. Nothing in the 1998 Letter specifically states that Pinney worked for 26 years and was only credited for half that time. Nor does the 1998 Letter or the attachment specify which years were used to calculate the 13.66667 figure.

In cases where courts have found a clear repudiation of benefits, there has been a much more direct repudiation than the statements contained in the 1998 Letter. *See, e.g.*, *id.* at 330-31 (finding that a cause of action accrued when the claimants stated that they "repeatedly have been informed by numerous individuals, including employee benefit department employees . . . , that they would not receive any benefit credit under the [plan] for their . . . service" and citing a collection of cases analyzing whether a cause of action accrued prior to the beneficiaries filing a formal claim for benefits); *Thompson v. Ret. Plan for Emps. of S.C. Johnson & Son, Inc.*, 651 F.3d 600, 605 (7th Cir. 2011) ("Although it

20

is certainly possible that generic [p]lan communications can prospectively repudiate unequivocally participant rights, we note that the more traditional case in which recovery is barred involves some direct communication to a participant who is actually pressing the issue." (citation omitted)).  Although Pinney could perhaps have paid closer attention to the contents of the 1998 Letter, it does not rise to the level of a clear repudiation of benefits.  *See Bennett*, 141 F.3d at 839 (ruling that a "letter on the date of [the beneficiary's] resignation that he forfeited any credit . . . in the . . . [p]lan . . . was a clear repudiation by the fiduciary); *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 66 (7th Cir. 1996) (finding that a fiduciary's three-page letter was a clear and unequivocal denial of benefits, as it "carefully and comprehensively explained the basis for its decision").

In the Motion, the only additional evidence that the Plan has produced is a letter from Pinney to the Plan dated November 28, 2011, in which Pinney states: "[i]nitially I was given pension credit under the 'employee' plan only for my time as a Branch Manager.  When I questioned that in 1997 when I again became a General Agent . . . I was also given credit for my previous time as an Assistant Branch Manager."  AR 2431-32.  The Plan argues that this statement demonstrates that "Pinney knew in 1997 that he was not receiving credit under the TA Employees Plan for the years 1972 to 1985."  Brief in Support of Motion at 19.  The actual 1997 correspondence between Pinney and the Plan (the "1997 Letter") is missing from the administrative record.

Although a close call, the court finds that Pinney's 2011 admission is insufficient to support a finding that he knew his benefits for the period of 1972 to 1985 were being repudiated at the time he received the 1997 and 1998 Letters.  The court is unable to determine whether the 1997 Letter constituted a clear and unequivocal repudiation of benefits without an actual record of its contents.  The 2011 reference to the 1997 communication is not enough to establish a clear and unequivocal repudiation.

Accordingly, the court shall deny the Motion with respect to the Plan's argument that Pinney's claim is barred by the statute of limitations based on the 1997 and 1998 Letters.

### 2. The 1972 general agent agreement

The Plan also argues that Pinney's cause of action accrued when he entered into the GA Agreement with Transamerica in 1972. The Plan points to a provision in the 1978 version[9] of the GA Agreement entitled "INDEPENDENT CONTRACTOR." This provision states that "[n]othing contained herein shall be construed to create the relation of employer and employee between the Company and the General Agent." AR at 2092. The Plan argues that this provision placed Pinney on notice that he was not entitled to benefits under the TA Plan when he entered into the GA Agreement in 1972. It contends that Pinney's claim is accordingly time-barred under Iowa's ten-year statute of limitations on contract claims. Pinney did not directly respond to this argument.[10]

The Plan's position finds support within Eighth Circuit case law. District courts in the Eighth Circuit have held that when a beneficiary brings an ERISA claim challenging a determination of non-employee status and ineligibility to participate in a benefits plan, the cause of action accrues when the beneficiary enters into an agreement that clearly states he is considered an independent contractor and not an employee. *See Kienle v. Hunter Eng'g Co.*, 24 F. Supp. 2d 1004, 1006-07 (E.D. Mo. 1998), *aff'd per curiam*, 187 F.3d 641 (8th Cir. 1999) (unpublished table decision); *Kryzer v. BMC Profit Sharing Plan*, No. 01-cv-299, 2001 WL 1587177, at *1-*4 (D. Minn. Nov. 1, 2001). The rationale is based

---

[9] According to Pinney, earlier versions of the GA Agreement were lost when a fire destroyed his office in 1978. Because the parties do not address whether the 1978 GA Agreement differed from the 1972 version, the court will assume that they are substantially similar if not identical.

[10] Pinney argues only that the independent contractor label should not control with respect to the terms of the TA Plan. *See* Pinney Reply at 7. However, he does not address his status as an independent contractor with respect to the statute of limitations argument.

on the clear repudiation doctrine—that a beneficiary knew or should have known he would not be entitled to benefits when he became an independent contractor. *See Bennett*, 141 F.3d at 839; *Kryzer*, 2001 WL 1587177, at *4 (stating that a beneficiary "knew, or should have known, that the Plan would not consider him eligible for benefits under the Plan when he signed the first independent contractor agreement that clearly provided that he would not be considered an employee").

In *Kienle*, the plaintiff signed a sales representative agreement designating him an independent contractor rather than an employee. *Kienle*, 24 F. Supp. 2d at 1005. The agreement stated that "it is the essence of this Agreement that the Sales Representative is a self-employed independent business person [and] . . . shall not be considered or deemed in any way to be an employee of the Company." *Id.* (alterations in original). The plaintiff argued that he and other independent contractors at the company should have been considered employees according to the terms of the employee benefits plan. *Id.* at 1005-06. In addressing the parties' statute of limitations arguments, the United States District Court for the Eastern District of Missouri noted that under the clear repudiation doctrine, "a beneficiary's ERISA action accrues ' . . . when there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiary.'" *Id.* at 1006 (quoting *Bennett*, 141 F.3d at 839). The district court then held that "plaintiff's claims under [ERISA] accrued . . . when he signed the agreement clearly informing him that he would be considered an independent contractor and not an employee." *Id.* at 1006-07. The court went on to find that the plaintiff's claim was time-barred. *Id.* at 1007. The Eighth Circuit affirmed the decision. *See Kienle*, 187 F.3d 641.

In *Kryzer*, the plaintiff worked as a salesman for a vision company for one year before being reclassified as an independent contractor. *Kryzer*, 2001 WL 1587177, at *1. He continued as an independent contractor at the company for nearly two decades before being hired again as a salaried employee. *Id.* After he was laid off the following year,

the plaintiff claimed that he had been operating as an employee under the independent contractor agreement and, therefore, was entitled to benefits during that period. *Id.* Relying on *Kienle* as "the law of the Eighth Circuit" and remarking that it was "consistent with the application of the discovery rule in this and other circuits in the ERISA context," the district court held that the plaintiff "knew, or should have known, that the Plan would not consider him eligible for benefits . . . when he signed the first independent contractor agreement that clearly provided that he would not be considered an employee of [the company]." *Id.* at *4. The district court accordingly found the plaintiff's cause of action accrued when he signed the first independent contractor agreement and that his claim was time-barred as a result. *Id.*

Other district courts outside of the Eighth Circuit have adopted a similar rule. *See, e.g.*, *Walker v. Pharm. Research & Mfrs. of Am.*, 439 F. Supp. 2d 103, 107-08 (D.D.C. 2006); *Muller v. Am. Mgmt. Ass'n Int'l*, 368 F. Supp. 2d 1166, 1172-73 (D. Kan. 2004); *Thomas v. SmithKline Beecham Corp.*, 297 F. Supp. 2d 773, 785 (E.D. Pa. 2003); *Schultz v. Texaco Inc.*, 127 F. Supp. 2d 443, 448 (S.D.N.Y. 2001); *see also Brennan v. Met. Life Ins. Co.*, 275 F. Supp. 2d 406, 410 (S.D.N.Y. 2003) ("[A]ll of the district courts that have considered claims made by individuals who were classified or treated as independent contractors have held that the statute of limitations begins to run when the beneficiary first learns that she is considered an independent contractor and is therefore not entitled to benefits, regardless of whether she later files a formal claim for benefits.").

The GA Agreement entered into by Pinney in 1972 clearly informed him that as a General Agent, he would not be considered an employee of Transamerica under the provision entitled "INDEPENDENT CONTRACTOR":

> Nothing contained herein shall be construed to create the relation of employer and employee between the Company and the General Agent. The General Agent may exercise his own judgment as to the time and manner in which he may perform the services required to be performed by him under this

> Agreement. The Company may, from time to time, prescribe rules and regulations respecting the conduct of the business covered hereby, not interfering with such freedom of action of the General Agent.

AR at 2092. The language in Pinney's GA Agreement is substantially similar to the contract at issue in *Kienle*. *See Kienle*, 24 F. Supp. 2d at 1005 ("[T]he Sales Representative is a self-employed independent business person [and] . . . shall not be considered or deemed in any way to be an employee of the Company."). Furthermore, Pinney's employment with Transamerica began in 1971 as an Assistant Branch Manager, an employee position that entitled him to benefits under the 1970 TA Plan. As Pinney himself acknowledges in the Cross Motion, "[u]nder all the relevant plan documents a 'Participant' [in the TA Plan] was any person who was an 'Employee.'" Brief in Support of Cross Motion at 8. Therefore, when Pinney became a General Agent in 1972 and signed the GA Agreement stating that he was no longer an "employee," he knew or should have known that such a change in his relationship to the company would amount to a repudiation of his benefits. *Cf. Thomas*, 297 F. Supp. 2d at 785-87 (finding an ERISA cause of action did not accrue when the plaintiffs executed independent contractor agreements because they were first hired as independent contractors and thus had no way of discovering the contents of the employee pension plans and whether they were entitled to benefits).

Therefore, the court finds that Pinney's cause of action accrued when he first executed the GA Agreement in 1972 and his claim is time-barred under Iowa's ten-year statute of limitations. *See* Iowa Code § 614.1(5). Accordingly, the court shall grant the Motion and deny the Cross Motion.

### VII. CONCLUSION

In light of the foregoing, the Motion for Judgment on the Administrative Record (docket no. 60) is **GRANTED**. The Cross Motion for Judgment on the Administrative Record (docket no. 61) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 9th day of March, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA